No. 31.—DANIEL McDOUGALD, plaintiff in error, *vs.* THE CENTRAL BANK OF GEORGIA, defendant in error.

[1.] The improper granting or refusal of a continuance, is ground for a writ of error.

[2.] Upon a motion for a continuance on account of the absence of a material witness, the court may compare the facts expected to be proved with the plea, and decide whether or not the testimony is material.

[3.] The Charter of the Insurance Bank of Columbus prescribes the mode in which contracts shall be executed to be binding on the Company, namely, that they shall be signed by the president and countersigned by the cashier. In a suit at the instance of the holder of a bill against the indorser, on a bill drawn by himself as president of the said corporation, and in his own favour, he cannot object to the regularity of the contract, nor is he protected on his indorsement by its want of conformity to the statute.

[4.] The 26th section of the Central Bank Charter, dispensing with proof of demand and notice, in order to charge indorsers, applies to suits upon notes payable elsewhere, as well as to those payable at that Bank.

[5.] If the indorser of any note or bill which is negotiated to the bank, is discharged for want of demand and notice, it is his duty to plead it by way of defence.

Assumpsit against the indorser of a bill of exchange. Tried before Judge ALEXANDER. In Muscogee Superior Court. May Term. 1847.

For the facts of the case, the questions made upon the trial below, and the errors assigned, see the opinion delivered by the Supreme Court.

JAMES N. BETHUNE for the plaintiff in error.

The points in this case are, that the Court below erred,

1. In refusing to continue the cause, upon the showing that the defendant below had an absent witness, who resided in the county and had been subpœnaed, and was absent without his consent or procurement, and who would prove the insolvency of the Planters and Mechanics' Bank of Columbus at the time it transferred the bill of exchange sued on, and that its bills were at that time greatly under par. *Prince* 633.

2. That the Court admitted in evidence a bill of exchange, declared on as a bill made by the Insurance Bank of Columbus, it appearing upon the face of the pleadings and the bill itself, that said bill was not signed by the president and countersigned by the

cashier of said bank. *Prince* 105, 103, 633; *Merchants' Bank* vs. *the Central Bank*, 1 *Kelly*, 418; 2 *Cranch* 166.

3. That the Court refused to admit testimony to prove, that at the time of the transfer of said bill of exchange by the said Planters and Mechanics' Bank of Columbus, the said bank was insolvent, and that the Central Bank received said bill of exchange with a knowledge of that fact. *Prince* 633.

4. That the Court refused to charge the jury, that the plaintiff below, having failed to prove property in said bill at its maturity, and having failed to prove notice of its dishonour, was not entitled to recover. *Const. Geo. art.* 1, *sec.* 17.

Jones, Benning & Jones, submitted the following points and authorities in behalf of the defendant in error :

1. The refusal of the continuance was not so arbitrary and oppressive an exercise of discretion as to be error. *Sealy* vs. *State*, 1 *Kelly* 215. Besides, the testimony expected from the absent witness was not material. *See* 3*d point.*

2. There was no variance between the bill of exchange described, and that proved. At most, the variance alleged was a question for the jury. *Story on Agency, secs.* 154, 155; *Mechanics' Bank of Alexandria* vs. *Bank of Columbia*, 5 *Wheaton* 326; *Story on Bills, sec.* 110.

3. The testimony offered ought to have been rejected, because the defendant below had " filed no set-off against the true owner, (Insurance Bank,) or any other defence in support of which his testimony could by any possibility be made available." *Field* vs. *Thornton*, 1 *Kelly* 312.

The plea avers no set-off at the *time* of the *commencement* of the suit, or of the putting in the plea. 1 *Arch. Nisi Prius,* 147; *Evans* vs. *Prosser,* 3 *T. R.* 186 ; 1 *Tidd* 664; nor does it aver "notice or knowledge " to *plaintiff* below of any of the matters stated in it. *Story on Bills, sec.* 189.

4. Notice of dishonour was not necessary. *Merchant's Bank of Macon* vs. *Central Bank,* 1 *Kelly* 431, 432.

*By the Court.*—Lumpkin, J., delivering the opinion.

The Central Bank of Georgia sued Daniel McDougald as indorser, in the Superior Court of Muscogee County, upon the following instrument :

["No. 42.]

$25,000.                    INSURANCE BANK OF COLUMBUS, }
                           *Columbus, Georgia, April* 28, 1842. }

   Pay to the order of Daniel McDougald twenty-five thousand
dollars on the 20th of October next.

   To the Cashier of Merchants' Bank, New-York, Oct. 17.

                    *Acceptance waived,*

                       D. McDOUGALD, *President.*

   Indorsed,

          D. McDOUGALD,

          J. C. WATSON, *Pres't P. & M. Bank.*

          J. C. WATSON,

          A. B. DAVIS, *Cash'r.*

             Pay to J. J. Palmer, or order,

                    , A. M. NISBET, *Cash'r.*"

   The declaration alleged, that the note was made by the Insurance
Bank of Columbus, by its president, D. McDougald; that the
defendant indorsed it to the Planters & Mechanics' Bank of
Columbus at the time it was given; that the said bank, by its
President, J. C. Watson, indorsed it to J. C. Watson, who indorsed
it to the Bank of Columbus, which by its cashier, A. B. Davis,
indorsed it to the plaintiff. The note was protested for non-pay-
ment. The writ averred also, that the bill was drawn and indorsed
by all the parties thereto with the intention of having it negotiated
to the plaintiff for the benefit of the defendant, and that it was in
fact so negotiated.

   The defendant pleaded the general issue, payment, set-off and a
special defence, to wit, that the said bill was transferred by the
Planters & Mechanics' Bank of Columbus after insolvency, and
not for the benefit of all the creditors and stockholders of the
said institution, and not to an innocent purchaser for a valuable
consideration, and without the knowledge or notice of the condition
of said bank.

   The case was finally tried on the appeal, in May, 1847. The
defendant moved for a continuance on account of the absence of a
witness, by whom he expected to prove the insolvency of the
Planters & Mechanics' Bank at the time of the transfer. The Court
refused the application, whereupon the defendant, by his counsel,
excepted.

   The plaintiff then tendered in evidence to the jury the instrument

on which the action was predicated. The defendant demurred to the testimony, upon the ground that the paper offered was not, and under its charter could not be, the bill of the bank, it not being executed according to the mode prescribed by its charter, and that consequently there was a variance between the allegation and the proof. The Court overruled the exception, whereupon the defendant by his counsel excepted.

The case having closed on the part of the plaintiff, the defendant proposed showing that the Planters & Mechanics' Bank was insolvent at the date of the indorsement of the paper, and that the *Central Bank knew the fact when it received the bill.* This the Court would not allow, and thereupon the defendant, through his counsel, excepted.

The defendant then prayed the Court to charge the jury, that inasmuch as the plaintiff had failed to show title in the bill before its maturity, and had likewise failed to prove notice to the defendant of the dishonour of the bill, it was not entitled to recover; which instructions the Court refused to give, whereupon the defendant excepted.

Every point made by this bill of exceptions, except that touching the continuance of the cause, having been previously adjudicated by this Court, and some of them repeatedly, it will not be expected that we should on the present occasion enter very elaborately into the reasons upon which our past decisions rest. It is the privilege of every party who considers himself aggrieved by any judgment below, to bring it up for the purpose of having it solemnly reviewed; and it is the duty of this Court patiently to hear and determine said complaint. And whenever one of our own opinions is doubted, or denied to be law, we shall take pleasure in re-examining it, and in correcting our *error* as well as the errors of others, if convinced that any have been *committed.* Still, except in cases involving principles of paramount importance, we cannot stop minutely to inquire into and sift the foundations on which our past adjudications are supported.

[1.] Continuances being addressed to the discretion of the court, it has been supposed that the improper granting or refusal of them is no matter for which a writ of error will lie to this Court. And perhaps if there be any class of cases to be entirely withdrawn from its jurisdiction, it would be this. And yet the contrary doctrine has been repeatedly ruled, in our sister states.

In *Vanblaricum* vs. *Ward,* 1 *Blackf.* 50, the refusal of the circuit

court to grant a continuance, was the only error assigned; and the Supreme Court of Indiana, in delivering its opinion, by Scott, J., say : " We consider a motion for a continuance, as an application to the sound legal discretion of the court, over which, if improperly used, a supervisory court will exercise a control. There are many cases where a party, without any laches on his part, may be placed in such a situation that, without a continu-, ance, he cannot possibly obtain his right; and to refuse a continuance in such cases is tantamount to a refusal of justice." ⸗

In a subsequent case of *Fuller* vs. *The State, ib.* 64, the court say—" We have determined that there may exist cases where a refusal of a court below to grant a continuance, may be assigned for error; and upon a reconsideration of the question, we are not dissatisfied with that opinion."

The same point has been repeatedly ruled in Virginia. 4 *Munf.* 547 ; 3 *id.* 170 ; 4 *H. & M.* 157, *note ; ib.* 180 ; *Gilmer* 123 ; 2 *Virg. Cas.* 6, 156 ; *also in Kentucky,* 2 *Marsh.* 382 ; 3 *Lit.* 451 ; *so also in Missouri,* 3 *Miss. R.* 28, 357, 359.

I am aware that there are contradictory opinions to be found in *some* of our sister States, as well as in the Supreme Court of the United States, going to the extent that the granting or refusing of continuances, amendments in pleadings, and new trials, and all incidental orders made in the progress of a cause, are matters so peculiarly addressed to the sound discretion of the courts of original jurisdiction, as to be fit for their decision, only under their own rules and modes of practice. It will be found, however, that their position as well as our own, is modified, if not controlled, by the law under which they act. Either their jurisdiction is restricted to *final* judgments in the inferior judicatories, or is an *incidental* power in this particular, leaving it optional with the appellate court to exercise it or not, whereas ours is by express delegation from the legislature.

By the rules of practice in this State, in all applications for [2.] continuances upon the ground of the absence of a witness, the party must not only swear that the testimony is material, *but he must state the facts expected to be proved by such witness. Hotchk.* 947. And this is done to enable the court to exercise a sound and intelligent discretion,· in order to prevent on the one hand an unnecessary procrastination, and on the other hand to avoid an injurious precipitation of trials.

In *Gibbes* vs. *Mitchell,* 2 *Bay* 351, when the cause was called for

trial, the defendant produced an affidavit to postpone it, in which it was stated that he had one or two material witnesses, who had been subpœnaed but did not attend, and without whose testimony he could not safely proceed to trial, or be able to substantiate the articles in his account. By reference to his account it was found to consist of various items, such as torts, trespasses, and other matters sounding in damages, and which were not properly pleadable; and others for money had and received, which were admissible; and therefore the court held, that unless the defendant would discriminate and point out what part of his account he expected to prove by his absent witnesses, he was not entitled to have his cause postponed.

And I cite this case to show, that the Court will look into the pleadings to see whether the testimony would be available if present.

So in *Harris* vs. *Harris*, 2 *Leigh* 584. Cabell, J. says—" The first main question is, whether the evidence expected of Taylor, (the absent witness,) as stated by the defendant, was material to his defence ? *To decide this question, it is necessary to compare the evidence with the facts stated in the plea, for it is to those the evidence must relate.*" The learned judge then proceeds to analyze the plea, and by a reference to the proof he concludes that his testimony was not material, and consequently his absence afforded no ground for the continuance of the cause.

By an examination of the special plea, it will be found that the only averment in it is, that *Watson*, to whom this bill was transferred, was not an innocent purchaser for a valuable consideration, and without knowledge or notice of the insolvency of the Planters & Mechanics' Bank. Now all this may be true, and still the defendant would not be protected from liability. The Central Bank was the holder of this paper, by a series of successive blank indorsements, from the payee. The declaration alleges that these several transfers were made at the time the bill was drawn. The plaintiff therefore was presumptively an innocent holder of this bill, and the testimony, to be material, should have controverted this fact ; and this it could not do, not having been put in issue by the plea. It is just as necessary that there should be the proper averments in the pleadings, to authorize the admission of the testimony, as that the proof when offered should correspond with the allegations. And the defence, it occurs to us, was fatally defective in this particular. Watson, the immediate indorsee of the Planters

and Mechanics' Bank, might have been, and from his position as president probably was, cognizant of its condition. Still the Central Bank, taking it before maturity, could not be affected without notice. And even if both Watson and the Central Bank had knowledge, yet as the latter derived its title through another intermediate transfer by the Columbus Bank—if the Columbus Bank was without notice, the Central Bank would be entitled to recover, notwithstanding notice on its part as well as that of Watson. *Story on Bills of Exchange, sec.* 188; 2 *Atk.* 182; 2 *Tenn. R.* 71; 1 *Camp.* 383.

As to the variance between the declaration and proof, or the [3.] objection to the instrument upon the ground that it is not signed in terms of the charter, we have this to say in addition to what has already been heretofore urged. It is true that the act prescribes the mode in which "the bills obligatory and of credit, notes and other contracts, on behalf of said corporation," (Insurance Bank of Columbus,) shall be executed, in order to be binding on said company; *i. e.* "that the same be signed by the president and countersigned by the cashier of said corporation." *Prince,* 105.

What follows if this is not done? "The funds of said corporation shall, in no case, be held liable for any contract or engagement whatever, unless the same be so signed and countersigned as aforesaid. *ib.* But here is no attempt to charge the funds of the Insurance Bank of Columbus. It is a suit against Daniel McDougald, on his indorsement of a bill which he drew as president of said bank, in his own favour, and he now seeks to avoid his liability, upon the ground, that he had no authority under the charter to make such a contract. I apprehend that he is bound upon his indorsement, whether the bank be or not; and, at any rate, the objection does not lie in his mouth. And this is a sufficient answer to the exception.

It will be time enough to give a construction to this clause in the charter, when an attempt shall be made to bind the funds of the corporation or the property of the stockholders, by these *apparently* irregular transactions.

Upon the question of notice, our confidence in the correct- [4.] ness of the interpretation which we have heretofore put upon the 26th section of the act establishing the Central Bank, remains unshaken. It is in these words; "All suits commenced by said corporation upon any note, bill, bond, or obligation, upon which there shall be any indorser or indorsers, the maker or makers,

together with the indorser or indorsers, or their representatives, may be embraced and sued in the same action, and no proof of notice, demand or protest, shall be required on any trial, to authorize a recovery." *Prince*, 75.

To have required notice on the trial of this suit in this bill, would have been to have disregarded and set at naught this plain and positive provision of the charter.

[5.]   If the defendant, in this or any other action, is entitled, under the laws of the land, to his discharge for want of notice, he can plead it by way of defence ; but it is not a condition precedent to entitle the bank to recover, as proof of demand and notice was by the law merchant.  And why should it be thought a hardship, or strange thing, for the statute to dispense with this usage, in favour of an institution owned exclusively by the people of the State, when the law has extended the same dispensation *to* all other holders of promissory notes, and other instruments, except such as are intended to be negotiated at some chartered bank, or deposited there for collection ? *Prince* 462.  Is it not just and right that this agent of the public should be put upon the same footing with the most favoured class of private creditors ?  At any rate, it was for the legislature to judge of this ; and having declared its will, in the most unambiguous manner, and there being no constitutional impediment in the way, we have nothing to do but obey its mandate.

Judgment affirmed.